## UNITED STATES

v.

## Kenneth J. DICKINSON, Staff Sergeant (E–6), U.S. Marine Corps.

### NMCCA 200200311.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 27 April 2000.

Decided 9 Aug. 2006.

Maj Charles Zelnis, USMC, Appellate Defense Counsel.

Lt Anthony Yim, JAGC, USNR, Appellate Defense Counsel.

Capt Roger Mattioli, USMC, Appellate Government Counsel.

Before CARVER, Senior Judge, VOLLENWEIDER, and GEISER, Appellate Military Judges.

GEISER, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial with enlisted representation of willful disobedience of a superior noncommissioned officer, two specifications of failure to obey a lawful

general regulation, dereliction of duty, negligent damage of Government property, drunken operation of a vehicle, being drunk on duty, conspiracy to obstruct justice, and three specifications of obstruction of justice, in violation of Articles 81, 91, 92, 108, 111, 112, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 891, 892, 908, 911, 912, and 934. The appellant was sentenced to a bad-conduct discharge, confinement for three months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

The appellant raises three assignments of error. First, he asserts that he was denied his 6th Amendment right to counsel when his attorney-client relationship with detailed counsel was severed by the Government without good cause. Second, the appellant argues that the convening authority selected members by a process that excluded junior officers from consideration and "stacked the panel, with senior members in positions of command in violation of Articles 25 and 37, UCMJ[, 10 U.S.C. §§ 825 and 837]." Finally, the appellant avers that the military judge abused his discretion when he denied the appellant's challenges for cause against members who exhibited a bias against alcohol-related incidents.

We have examined the record of trial, the assignments of error and Government's response. We concur with the appellant's contention that he was denied his 6th Amendment right to counsel when his attorney-client relationship with his assistant defense counsel was severed without his consent or good cause. We will take appropriate action in our decretal paragraph. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Procedural Background

The facts giving rise to this appeal are not in dispute. On 16 September 1999, the charges detailed above were preferred against the appellant. Previously, on 18 July 1988, the Commanding General of Marine Corps Air Bases Western Area delegated counsel detailing authority to the Director of Legal Services of the Joint Law Center (Di-

rector). Colonel (Col) Durrett was the Director during the appellant's court-martial. On 13 August 1999, the Director issued a sub-delegation letter to Major (Maj) Nagel, Senior Defense Counsel, Marine Corps Air Station (MCAS), Miramar, authorizing that officer to detail defense counsel subject to certain time and location restrictions. On 17 September 1999, Maj Nagel detailed Captain (Capt) Armstrong to represent the appellant. Thus, at all relevant times, both Col Durrett and Maj Nagel had legal authority to detail defense counsel. No other counsel was initially detailed to the appellant's case.

Capt Armstrong was notified, coincident with his representation of the appellant at an Article 32, UCMJ, hearing arising from the instant charges, that Col Durrett intended to move Capt Armstrong to the prosecution shop on or about 1 January 2000. On 29 December 1999, Capt Armstrong submitted, on behalf of the appellant, an individual military counsel (IMC) request for Lieutenant Colonel (LtCol) White. At the time of the request, LtCol White was serving as Regional Defense Counsel, Western Region. His office was located at Camp Pendleton and he had extensive trial experience at the general court-martial level. As part of the IMC request, the appellant specifically asked that Capt Armstrong or another detailed counsel remain on the case.

On 11 January 2000, the appellant was arraigned. Both LtCol White and Capt Armstrong were present for the defense. Although a formal written response to the IMC request was still pending, LtCol White represented to the military judge that he had been verbally informed that he would be made available. The Government did not object to that representation. The military judge inquired if Capt Armstrong had been approved to remain on the case as associate defense counsel. During a brief defense conference, Maj Nagel asked the appellant if he specifically wanted Capt Armstrong to remain on the case. When the appellant answered in the affirmative, Maj Nagel verbally approved the request.[1] The military judge

---

1. For clarity, we use the term "detailed defense counsel" for Capt Armstrong prior to approval of the appellant's IMC request and the term "asso-

ciate defense counsel" once the appellant's request that Capt Armstrong remain on the case was approved by Maj Nagel.

was so informed. With respect to his decision, Maj Nagel testified that his customary practice was to grant such requests absent a reason not to do so. Record at 32–34.

On 12 January 2000, LtCol White was formally made available in writing as IMC to the appellant's case. That same day, Col Durrett, unaware that Maj Nagel had verbally approved the appellant's request for Capt Armstrong to remain on the case, denied the appellant's request in writing. In making his determination, Col Durrett considered the quality of the IMC, law center personnel resources, potential ethics problems, Capt Armstrong's career progression, and the complexity of the case.

The defense made a timely motion at trial to retain Capt Armstrong on the defense team as associate counsel pursuant to Maj Nagel's verbal approval. After taking testimony, the military judge held that the Major's customary practice in granting such requests was inconsistent with the policy expressed in Article 38(b)(5), UCMJ, 10 U.S.C. § 838(b)(5). The article states that "if the accused is represented by military counsel of his own selection" then ordinarily "any military counsel detailed ... shall be excused." Article 38(b)(6) further provides that an accused is not entitled to be represented by more than one military counsel but that the person authorized to detail counsel may, in his sole discretion, approve such a request after considering the seriousness of the case, retention of civilian defense counsel, complexity of legal or factual issues and the detailing of additional trial counsel. Maj Nagel tacitly acknowledged that he did not consider these factors prior to granting the appellant's request. Record at 32–34.

RULE FOR COURTS-MARTIAL 506(b)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.) provides that a decision to grant or deny a request that the detailed defense counsel remain on the case as an associate defense counsel is subject to review only for abuse of discretion. The military judge applied this standard and held that, while Maj Nagel had authority to make the decision to detail Capt Armstrong as an associate defense counsel, he abused his discretion when

he did so. Having removed Maj Nagel's decision from the equation, the military judge found that Col Durrett applied the correct standard and did not abuse his discretion. Based on these findings, the military judge held that Maj Nagel's decision, although first in time, was a nullity and Col Durrett's subsequent written decision denying the appellant's request was operative. The military judge denied the defense motion to retain Capt Armstrong on the defense team.

### Discussion

The ruling of a military judge on an IMC-related request, including a question involving the potential severance of an attorney-client relationship, is a mixed question of fact and law. Legal conclusions are subject to *de novo* review, and findings of fact are reviewed under a clearly erroneous standard. *United States v. Spriggs*, 52 M.J. 235, 244 (C.A.A.F.2000)(citing *United States v. White*, 48 M.J. 251, 257 (C.A.A.F.1998)).

R.C.M. 505(d)(2)(B) authorizes detailed defense counsel to be excused after the formation of an attorney-client relationship under three conditions. First, detailing authorities may sever an existing relationship once an IMC requested by an accused has entered the case. Second, an accused may request or consent to the severance. Third, the Government may sever an attorney-client relationship without the appellant's consent for "good cause." In the instant case, the attorney-client relationship between the appellant and Capt Armstrong was terminated following an approved IMC request.

█ In the context of an IMC request, an accused has the right to request that his detailed defense counsel be permitted to remain on the case as an associate defense counsel. The Government contends that it may, under R.C.M. 506(b)(3), grant such a request but later reverse if the decision to grant the request was an abuse of discretion. We do not agree.

On its face, R.C.M. 506, UCMJ, provides that a detailing authority's decision concerning an appellant's request to retain his or her detailed defense counsel may be reviewed only for abuse of discretion. It is important

**566**

to note, however, that the rule does not facially distinguish between a decision granting such a request and a decision denying such a request. Such a distinction must, however, be made.

 If an appellant's request to retain a previously detailed defense counsel as an associate counsel is approved by the detailing authority, any subsequent removal of that counsel once again requires compliance with R.C.M. 505(d)(2)(B). The Government's view that R.C.M. 506(b)(3) permits severance of an existing attorney-client relationship without the consent of the accused based on a lesser standard than "good cause" is inaccurate. We do not believe that result is what the President intended. *See United States v. Bevacqua,* 37 M.J. 996, 998–99 (C.G.C.M.R. 1993).

Clearly the appellant did not consent to severance. Further, the Government does not assert, and we do not find, good cause to remove Capt Armstrong from the appellant's defense team. While the factors considered by Col Durrett were valid and relevant to the administrative efficiency of his organization and would have been sufficient to support an initial denial of the appellant's request, they did not constitute good cause. Once entered into, the relationship between an accused and his appointed military counsel may not be severed or materially altered for administrative convenience. This includes a routine change of assignment. Absent a truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship, only an accused may terminate the existing affiliation with a detailed trial defense counsel. *United States v. Iverson,* 5 M.J. 440 (C.M.A.1978).

Accordingly, we find the military judge erred when he permitted the Government to sever the existing attorney-client relationship between the appellant and Capt Armstrong under the color of R.C.M. 506(b)(3). Our superior court has held that the unlawful severance of an existing attorney-client relationship dictates reversal without regard to the amount of prejudice sustained. *United States v. Catt,* 50 C.M.R. 326, 333, (C.M.A.1975).

**Conclusion**

In view of our finding above, the remaining assignments of error are moot. The findings and the sentence are set aside. The record is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority who may order a rehearing.

Senior Judge CARVER and Judge VOLLENWEIDER concur.