UNITED STATES, Appellant

v.

Lawrence G. HUTCHINS III, Sergeant
U.S. Marine Corps, Appellee

No. 10-5003

Crim. App. No. 200800393

United States Court of Appeals for the Armed Forces

Argued October 13, 2010

Decided January 11, 2011

EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, ERDMANN, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Colonel Louis J. Puleo, USMC (argued); Captain
Mark V. Balfantz, USMC, and Brian K. Keller, Esq. (on brief).

For Appellee:  Major S. Babu Kaza, USMCR (argued); Captain
Jeffrey R. Liebenguth, USMC (on brief).

Amicus Curiae for the United States Coast Guard Appellate
Government Division:  Lieutenant Commander D. K. Daniels (on
brief).

Amicus Curiae for the United States Air Force Appellate
Government Division:  Captain Charles G. Warren and Gerald R.
Bruce, Esq. (on brief).

Military Judges:  Jeffrey G. Meeks (trial), T. J. Sanzi (DuBay
hearing)

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Hutchins, No. 10-5003/MC

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted Appellee, contrary to his pleas, of conspiracy, making a false official statement, unpremeditated murder, and larceny, in violation of Articles 81, 107, 118, 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 907, 918, and 921 (2006). The sentence adjudged by the court-martial included a dishonorable discharge, a reprimand, confinement for fifteen years, and reduction to pay grade E-1. The convening authority approved only so much of the sentence as provided for eleven years of confinement, reduction to pay grade E-1, and a dishonorable discharge.

On appeal, the United States Navy-Marine Corps Court of Criminal Appeals focused on the process by which one of Appellee's three defense counsel terminated his participation in the case. United States v. Hutchins, 68 M.J. 623, 624 (N-M. Ct. Crim. App. 2010). The court determined that the record did not adequately address this issue, and returned the record for a limited post-trial factfinding hearing under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R 411 (1967). See Hutchins, 68 M.J. at 624. After reviewing the initial record of trial and the record of the post-trial factfinding proceeding, the Court of Criminal Appeals concluded that procedural error had occurred in the termination of the attorney-client relationship. Id.

Based upon the procedural error, the court determined that the circumstances warranted a presumption of prejudice and treated Appellee's remaining assignments of error as moot. Id. at 631. Based upon the presumption of prejudice, the court set aside the findings and sentence, and authorized a rehearing. Id.

The Judge Advocate General of the Navy certified the case to this Court for review of the following issues:

I. WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN FINDING, INTER ALIA, THAT THE MILITARY JUDGE SEVERED THE ATTORNEY-CLIENT RELATIONSHIP WITH CAPTAIN BASS?

II. WHETHER UNDER R.C.M. 505(d)(2)(B), THE NAVY-MARINE CORPS COURT INCORRECTLY FOUND NO "GOOD CAUSE" ON THE RECORD FOR THE REPLACEMENT OF APPELLANT'S SECOND DETAILED DEFENSE COUNSEL WITH ANOTHER COUNSEL?

III. WHETHER THE LOWER COURT APPLIED THE WRONG STANDARD AND ERRONEOUSLY PRESUMED, WITHOUT ASSESSING, PREJUDICE AND SET ASIDE THE FINDINGS AND SENTENCE, WHERE APPELL[EE]'S STATUTORY RIGHTS, AND CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WERE SATISFIED THROUGH TRIAL?

## I. OVERVIEW

### A. COUNSEL RIGHTS UNDER THE UCMJ

The certified issues concern the right of an accused to be represented by counsel under the UCMJ. In each general and special court-martial, a statutorily qualified military defense counsel, known as detailed military defense counsel, is assigned

3

to represent the accused.  Article 27(a)(1), UCMJ, 10 U.S.C. § 827(a)(1)(2006).  The detailing authority has discretion to assign additional military defense counsel, designated as assistant or associate detailed military defense counsel, to represent the accused.  Article 27(a)(1) UCMJ; Article 38(b)(6)(A), 10 U.S.C. § 838(b)(6)(A)(2006).

Article 27 requires the Secretaries of the military departments to prescribe regulations governing the detail of counsel to courts-martial, permitting the detail through judge advocate rather than command channels.  Under current regulations, the defense counsel structure in the Marine Corps exercises the responsibility for detailing defense counsel to general and special courts-martial in that service.  Dep't of the Navy, Judge Advocate General Instr. 5800.7E, Manual of the Judge Advocate General § 0130b(1) (June 20, 2007).

By statute, the accused may request representation by individual military counsel of the accused's own selection, subject to the availability of such counsel under applicable statutory and regulatory standards.  Article 38(b)(3)(B), UCMJ.  In addition to military defense counsel furnished at government expense, the accused may be represented by civilian counsel provided by the accused.  Article 38(b)(3)(B), UCMJ.

    B.   REPRESENTATION OF APPELLEE AT HIS COURT-MARTIAL

In the present case, Appellee faced a variety of serious charges related to the death of an Iraqi citizen in Hamdaniyah, Iraq.  Throughout the pretrial, trial, and post-trial proceedings, Appellee received the assistance of multiple counsel, including civilian defense counsel of his own selection, detailed military defense counsel, and detailed military assistant defense counsel.  See Articles 27, 38, UCMJ. The accused did not submit a request for representation by individual military counsel, and that right is not at issue in the appeal now before us.

Two of the attorneys who represented Appellee -- the civilian defense counsel and the detailed military defense counsel -- remained on the defense team throughout all proceedings pertinent to the present appeal.  One attorney -- the first detailed military assistant defense counsel -- terminated his representation of Appellee during the pretrial proceedings, and a new assistant defense counsel later joined the defense team for the remainder of the pretrial and trial proceedings.

For the reasons set forth below, we conclude that:  (1) the first detailed military assistant defense counsel did not follow the appropriate procedures with respect to the termination of his participation in the case; (2) the record of trial does not

establish a valid basis for such termination under the circumstances of this case; (3) any procedural deficiencies concerning the termination and replacement of the first detailed military defense counsel did not result in prejudice to Appellee under applicable constitutional and statutory standards of law; and (4) the circumstances require return of the case to the Court of Criminal Appeals for the completion of review under Article 66, UCMJ, 10 U.S.C. § 866 (2006).

## II.  BACKGROUND

### A.  THE FORMATION AND TRANSFORMATION
OF THE DEFENSE TEAM

### 1.  Overview of pretrial and trial proceedings

The Government preferred the initial charges against Appellee on June 21, 2006.  On August 18, 2006, the convening authority referred a variety of charges for trial by general court-martial.  The military judge held the first pretrial session of the court-martial on December 7, 2006.  Subsequent pretrial sessions took place on  February 27 and 28, 2007, March 26, 2007, June 11, 12, and 13, 2007, and July 11 and 12, 2007. The military judge initially scheduled trial on the merits to begin on April 23, 2007.  After granting several defense requests for continuances, the military judge held the first

trial proceeding on July 23, 2007. The trial concluded on August 3, 2007.

2. The initial defense team

From July 2006 to May 2007, Appellee's defense team consisted of three attorneys: Mr. J. Richardson Brannon, a civilian counsel retained by Appellee; Lieutenant Colonel Joseph S. Smith, who served as the detailed defense counsel; and Captain Alan Bass, who served as the detailed assistant defense counsel. Mr. Brannon served as lead defense counsel. The record reflects an appropriate inquiry by the military judge into the validity of the detailing or selection of each of these counsel and establishment of an attorney-client relationship between each counsel and Appellee.

3. EAS -- The planned departure of Captain Bass from active service

During the summer of 2006, Captain Bass, the detailed assistant defense counsel, initiated an application through personnel channels to end his active duty service (EAS) as a Marine Corps officer. On August 31, 2006, Captain Bass submitted a request to resign his commission, proposing an effective date of July 1, 2007. According to his later testimony, he did not focus in the summer of 2006 on the relationship between his resignation request and the pending trial. In his view, the timing of his departure "didn't appear

7

to be an issue" because of the anticipated trial schedule which provided for beginning trial on the merits on April 23, 2007, more than two months before his proposed separation date.

In the November 2006 time frame, Lt. Col. Smith, the detailed defense counsel, learned of the proposed departure of Captain Bass from active duty. Mr. Brannon, the lead counsel, learned of the proposed departure at some point during the pretrial stage of the hearings, but he could not recall with any greater precision when he first heard that Captain Bass would be leaving active duty. The Marine Corps approved the resignation request from Captain Bass in February 2007, with an effective date of July 1, 2007.

During the period from August 2006 until May 2007, Captain Bass participated in all of the pretrial sessions held by the military judge. During that period, he did not inform either the military judge or Appellee of his August 2006 request for separation, nor did he advise the military judge or Appellee of the February 2007 approval of the request by the Marine Corps.

4. The first defense motion for a continuance

On March 12, 2007, the defense submitted a motion proposing to move the start of trial on the merits from April 23, 2007, the originally scheduled date, to July 16, 2007. The motion, signed by Lt. Col. Smith, the detailed defense counsel, described developments that required further investigation and

8

preparation by the defense.  After noting Appellee's pretrial confinement status, the defense motion expressly stated that "[Appellee] is aware of the importance of obtaining the additional time to properly prepare for trial and is affirmatively requesting that the continuance be granted in order to ensure that his right to a fair trial is honored."  The defense further contended that the circumstances requiring a continuance until the proposed new trial date "constitute an assertion of Sergeant Hutchin's [sic] 6th Amendment right to the effective assistance of counsel," adding that "failure to grant it [the continuance] will strip Sergeant Hutchins of his fundamental 6th Amendment right to the effective assistance of counsel."

The motion did not refer to the impending resignation of Captain Bass, nor did the motion indicate directly or indirectly that the defense based the continuation request on the impending resignation.  The text of the motion did not reflect the fact that the proposed trial date -- July 16 -- would result in commencement of trial on the merits subsequent to the July 1 termination of Captain Bass's active duty status.

The defense motion referred to negotiations with the trial counsel regarding the proposed date and indicated that the prosecution did not oppose the motion.  The military judge

subsequently granted the motion to postpone the start of the trial date to July 16, 2007.

5.   The second defense motion for a continuance

Through the middle of May 2007, Captain Bass continued to participate actively as a member of the defense team.  On May 18, 2007, he submitted to the military judge a defense motion requesting relief with respect to the authorized sentence in the case.  On the same day -- May 18 -- the defense submitted a second request for continuance of trial on the merits.  Lt. Col. Smith, the detailed defense counsel, signed the motion, and Captain Bass signed the certificate of service.

In the motion for continuance, the defense contended that counsel would need additional preparation time following resolution of a pending discovery issue.  Although the motion did not assert that the discovery matter was under the responsibility of any particular member of the defense team, the motion took note of the impending departure of Captain Bass.  In that regard, the motion made three points.  First, the motion observed:  "One of the detailed defense counsel for the accused, Captain A. G. Bass, is separating from active duty effective 1 July 2007."  Second, the motion connected Captain Bass's change in status to a change in the composition of the defense team:  "For this reason, he is being released as detailed counsel and Major B. Cosgrove, USMCR is being detailed as his replacement."

10

Third, the motion directly connected the request for a continuance to Appellee's right to counsel: "Given this change in defense counsel, the defense requires additional time to allow Major Cosgrove to adequately prepare to effectively represent the accused in his case."

The motion expressly described Appellee's personal involvement in the request for a continuance, stating:

> Although Sergeant Hutchins is confined at the Base Brig and any continuance in the trial necessarily impacts him, he is aware of the importance of obtaining the additional time to properly prepare for trial and is affirmatively requesting that the continuance be granted in order to ensure that his right to a fair trial is honored.

In line with the prior motion for a continuance, the second motion specifically tied the request to Appellee's right to counsel: "The underlying bases for a continuance constitute an assertion of Sergeant Hutchin's [sic] 6th Amendment right to the effective assistance of counsel, . . . [and] failure to grant it [the continuance] will strip Sergeant Hutchins of his fundamental 6th Amendment right to the effective assistance of counsel . . . ." Consideration on the motion was deferred until the June 11-13 hearing session.

6.   Captain Bass informs Appellee of his impending separation
     from active duty

At some point in May, Captain Bass informed Appellee that he was leaving active duty and that he would no longer represent Appellee as his detailed defense counsel.  He did not obtain a written release from Appellee.  The record indicates that this discussion took place in early May, but the record does not establish whether the conversation occurred before or after Captain Bass participated in the May 18, 2007, defense request for a continuance.

It does not appear from the record that Captain Bass advised Appellee regarding the potential for a change in the separation date, nor does it appear that Captain Bass informed him of the possibilities for remaining on the case in military status.  Although Captain Bass mentioned that he might return for the trial as a civilian in a pro bono capacity, he did not follow up on that suggestion.  Captain Bass had no further contact with Appellee after the May meeting.

Shortly after the May meeting, Captain Bass began his terminal leave.  In that status, he remained a member of the Marine Corps, but in a leave status without any assigned military duties.

In the present case, Captain Bass did not request release from his duties as defense counsel from the military judge,

senior defense counsel, or any other authority.  No member of
the defense team informed Appellee of potential options for
continued representation by Captain Bass, such as foregoing
terminal leave, postponing the date of separation, or serving as
defense counsel in a reserve status.  See infra Section III.A.2.
The record reflects that the lead counsel, Mr. Brannon, and the
detailed defense counsel, Lt. Col. Smith, did not find it
necessary to explore the options for retaining Captain Bass on
the case or to provide specific advice to Appellee in that
regard.  Instead, they treated the release of Captain Bass as a
fact of life, and made no effort to retain him as a member of
the defense team.

7.    The status of the defense team at the June 11, 2007
      pretrial hearing

On June 11, 2007, the military judge conducted a pretrial
hearing that included consideration of the defense request for a
continuance regarding the starting date for trial on the merits.
At the outset of the hearing, the military judge described
various changes in the composition of the defense team.  He
began by stating that "in the prior session of the Court, the
accused was represented by Captain Bass, Lieutenant Colonel
Smith, and Mr. Brannon."  The military judge then observed that
"Captain Bass is currently not present."  The military judge
stated that he had "been informed by counsel that he [Captain

13

Bass] arrived at his Expiration of Active Service in the Marine Corps, and has been discharged from the Marine Corps and has been relieved as detailed defense counsel in this case; and has been replaced by Lieutenant Colonel Cosgrove."

The military judge further observed that "Lieutenant Colonel Cosgrove currently is not present." At that point, he asked defense counsel to "inform me on the status of both, just to clarify on Captain Bass and Lieutenant Colonel Cosgrove, and then also what's happening with Lieutenant Colonel Cosgrove today."

The detailed defense counsel, Lt. Col. Smith, responded that "Captain Bass reached the end of his obligated service. He has been relieved of representation of Sergeant Hutchins. Lieutenant Colonel Cosgrove has been detailed by Colonel Carol Joyce, the Chief Defense Counsel of the Marine Corps to serve -- ."

At that point, the military judge interrupted counsel and engaged counsel for both parties in a colloquy on the issue of whether Colonel Joyce possessed the authority to detail defense counsel in the present case. In response to questions from the military judge, Lt. Col. Smith said that the approval of Lt. Col. Cosgrove to serve as defense counsel occurred on May 19 or 20. He also noted his "understanding" that as of the June 11

hearing, Cosgrove had not yet established an attorney-client relationship with Appellee.

Following the inconclusive discussion as to the source of authority for detailing Lt. Col. Cosgrove, the military judge returned to Captain Bass's departure, asking when he left active duty.  Lt. Col. Smith, the detailed defense counsel, provided the following ambiguous answer:

> I'm not sure of the exact date, Your Honor.  I know that he was -- executed orders to -- on terminal leave some time around the -- before Memorial Day holiday.  I know that, sir.  Some time probably around the 25th of May; that could be off a few days one way or another.

The military judge did not attempt to clarify whether Captain Bass, at the time of the June 11 hearing, remained on active duty in a terminal leave status or whether he had been separated from the Marine Corps.  The record of trial does not indicate why Captain Bass, his co-counsel, or his superiors apparently treated the discretionary status of terminal leave as having a greater priority than his obligation to represent his client.  Similarly, the record of trial does not contain information regarding the formalities of any termination of the attorney-client relationship.

The military judge then turned to the subject of Appellee's right to select individual military counsel, and the impact of any such request on his representation by Lt. Col. Smith.  In

15

that context, the military judge provided the following advice to Appellee regarding Captain Bass: "Now you have the right to all your detailed defense counsel including Captain Bass; however, once Captain Bass leaves active duty, there's no way that the Marine Corps can keep him on as your detailed defense counsel." When he inquired as to whether Appellee understood that point, Appellee responded in the affirmative.

The military judge misinformed Appellee when he asserted that there was "no way" for the Marine Corps to provide for Captain Bass to continue in military status as detailed defense counsel. See infra Section III.A.2. Moreover by neglecting to clarify the status of Captain Bass at the time of the June 11 hearing, the military judge failed to inform Appellee of his right to representation by Captain Bass at the June 11 hearing.

In response to questions from the military judge, Appellee stated that he had discussed the issue of Captain Bass in detail with Mr. Brannon and Lt. Col. Smith, and stated that he had no questions regarding his right to counsel. In the context of this exchange, and the problems noted above, it is not apparent whether Appellee received accurate advice from civilian counsel and detailed counsel, or whether they labored under the same misapprehensions as the military judge.

The military judge concluded the discussion by confirming that Appellee had not yet entered into an attorney-client

16

relationship with Lt. Col. Cosgrove, that he had not made any request for assignment of a specific individual military counsel, and that he wanted to be represented by Mr. Brannon, Lt. Col. Smith, and Lt. Col. Cosgrove. The military judge commented that he remained concerned about the question of whether Lt. Col. Cosgrove had been properly detailed to the case, and he advised the parties that he would explore that matter, as well as Appellee's right to request individual military counsel, in a subsequent session.

8. Representation at trial

Eventually, the military judge determined that an appropriate authority detailed Lt. Col. Cosgrove to serve as defense counsel and that Appellee agreed to proceed with the defense team of Mr. Brannon, Lt. Col. Smith, and Lt. Col. Cosgrove. The record of the trial proceedings contains no further discussion regarding representation by Captain Bass. Mr. Brannon, Lt. Col. Smith, and Lt. Col. Cosgrove represented Appellee during the ensuing pretrial and trial proceedings.

B. CONSIDERATION OF THE RIGHT TO COUNSEL
BY THE COURT OF CRIMINAL APPEALS

The Navy-Marine Corps Court of Criminal Appeals found that all the participants at Appellee's court-martial were "mutually confused regarding Capt Bass'[s] active duty status," and the other issues of severance. Hutchins, 68 M.J. at 627. In that

context, the court concluded that "the military judge effectively severed the attorney-client relationship" and did so without good cause.  Id.  The court determined that Captain Bass failed to properly advise Appellee on his options and walked away from the case without a proper handoff.  Id. at 630.  The court further determined that the military judge compounded matters by treating the situation as a fait accompli and by approving counsel's departure without fully explaining the situation to Appellee.  Id. at 629-30.  Noting that the errors in the case came from both within and outside of the defense team, the Court of Criminal Appeals declined to conduct a prejudice analysis.  Id. at 631.  The court presumed prejudice and set aside the findings and sentence.  Id.

## III.  DISCUSSION

On appeal, the Government contends that the Court of Criminal Appeals erred both in its assessment of error and by applying a presumption of prejudice.  The Government takes the position that the expiration of a defense counsel's active service obligation established good cause to sever the attorney-client relationship.  The Government further contends that even if error occurred with respect to the procedural details of severing the relationship, the severance did not prejudice

Appellee in this case under Article 59(a), UCMJ, 10 U.S.C. § 859 (a)(2006).

The defense contends that the Court of Criminal Appeals correctly decided that the record did not establish good cause for severance of the attorney-client relationship and that the presumption of prejudice was appropriate under applicable case law. The defense further contends that even if an assessment of prejudice is required, the record establishes that the severance resulted in prejudice to Appellee.

The issues raised by the parties focus on the procedural rules for withdrawal or change of defense counsel, including the standards for evaluating prejudice from noncompliance with those rules. In its present posture, the case before us is limited to those issues, and does not involve an allegation that the defense team provided ineffective assistance of counsel under applicable Sixth Amendment standards, that the Government intentionally interfered with the attorney-client relationship, or that the Government denied a request by the defense to continue the services of the assistant detailed defense counsel.

## A. PROCEDURAL REQUIREMENTS FOR WITHDRAWAL OR CHANGE OF COUNSEL

Under the Rules for Courts-Martial (R.C.M.), an established attorney-client relationship between an accused and defense counsel may be severed only under a limited set of

circumstances. See, e.g., United States v. Wiechmann, 67 M.J. 456, 458 (C.A.A.F. 2009). R.C.M. 505(d)(2)(B) and 506(c), which provide the primary authority for severance of an attorney-client relationship, authorize four options, which are discussed below.

The military judge has a critical role in this process. R.C.M. 813 expressly requires the military judge to note which counsel are present or absent at each session of the court-martial. Moreover, under R.C.M. 813(c), "[w]henever there is a replacement of . . . counsel, either through the appearance of new personnel or personnel previously absent or through the absence of personnel previously present, the military judge shall ensure the record reflects the change and the reason for it." See generally United States v. Acton, 38 M.J. 330, 335-37 (C.M.A. 1993) (noting that even when good cause or express consent exist, it is necessary to place that information on the record).

1.  Excusal by the detailing authority for good cause shown on the record

The detailing authority may excuse detailed defense counsel "[f]or other good cause shown on the record." R.C.M. 505(d)(2)(B)(iii). Under the Rule, "'good cause' includes physical disability, military exigency, and other extraordinary circumstances which render the member, counsel, or military

judge unable to proceed with the court-martial within a reasonable time." R.C.M. 505(f). The Rule further states that good cause "does not include temporary inconveniences which are incident to normal conditions of military life." Id.; see infra Section III.B. (addressing the application of R.C.M. 505(d)(2)(B)(iii) to the circumstances of the present case).

2.  Excusal of defense counsel with the express consent of the accused

Defense counsel also may be excused "with the express consent of the accused." R.C.M. 506(c). The military judge, after hearing from counsel, variously stated that Captain Bass either had left or was leaving active duty, and that there was "no way" that Captain Bass could continue to represent Appellee. The military judge, apparently assuming that Captain Bass already had been relieved, presented the termination of the attorney-client relationship as an established fact without ascertaining whether any consideration had been given to other available options, such as postponing terminal leave, requesting a delay in Captain Bass's date of separation, or requesting representation by Captain Bass in his post-separation status as a military reservist. See, e.g., 10 U.S.C. §§ 12301, 12303 (allowing for voluntary and involuntary activation of reserve members under specified conditions); see also, Dep't of the Navy, Marine Corps Order P1900.16F, Marine Corps Separation and

Retirement Manual para. 1010 (June 6, 2007) [hereinafter MCO P1900.16F]. Under these circumstances, the record of trial does not establish the required consent to the severance of the relationship on the part of Appellee under R.C.M. 506(c).

3. Application for withdrawal by the defense counsel for good cause

Under the third option, also part of R.C.M. 506(c), defense counsel may be excused "by the military judge upon application for withdrawal by the defense counsel for good cause shown." The record of trial does not contain an application for withdrawal from the assistant defense counsel, and the military judge who conducted the post-trial factfinding proceeding concluded that no such application had been submitted. See supra Section II.A.6. Accordingly, the record of trial does not provide a basis for concluding that counsel withdrew upon request under R.C.M. 506(c).

4. Excusal upon appointment of individual military counsel

The fourth option permits the detailing authority to excuse detailed defense counsel upon appointment of individual military defense counsel requested by the accused under Article 38(a)(3)(B). See R.C.M. 505(d)(2)(B)(i); R.C.M. 506(b)(3); R.C.M. 506(c). As the accused did not request appointment of individual military counsel, that option is not at issue in the present case.

B.   CONSIDERATION OF SEVERANCE DURING APPELLEE'S TRIAL

Captain Bass informed Appellee in May 2007 that he would no longer serve as his counsel in view of his impending separation from active duty.  The next session of the court-martial took place on June 11, 2007.  Captain Bass, although still on active duty, did not attend the hearing.  At that hearing, the military judge did not establish, on the record, the specific reason for the absence of Captain Bass; nor did the military judge establish on the record the basis under R.C.M. 505 or 506 for Captain Bass's withdrawal from representation of Appellee.

The record of the June 11 proceeding contains a variety of statements from counsel regarding the status of Captain Bass. See supra Section II(A)(7).  The Government contends that these statements reflect an understanding that the detailing authority had excused Captain Bass from further representation of Appellee based upon Captain Bass's impending departure from active duty. None of those remarks, however, contain a statement by or on behalf of the detailing authority excusing Captain Bass from representing Appellee at either the June 11 proceeding or any further proceedings in the case.

The Government contends that separation from active duty, by itself, establishes good cause for severance of an attorney-client relationship, and that nothing more than an impending separation need be shown on the record.  The defense contends

that the Government should be required to establish good cause for any severance, and has suggested that separation from active duty be tested under a range of criteria that take into account both the Government's interests and the interests of the accused.

Our case law does not establish separation from active duty as necessarily establishing good cause in every case, nor does our case law establish a specific methodology for considering the relative interests of the government, counsel, and the client.  Compare, e.g., United States v. Spriggs, 52 M.J. 235, 246 (C.A.A.F. 2000) (stating that "[a]bsent government misconduct, the routine separation of a judge advocate from active duty normally terminates any attorney-client relationship . . . ."), with United States v. Eason, 21 C.M.A. 335, 45 C.M.R. 109, 111 (1972) (observing that an attorney-client relationship "may not be severed or materially altered for administrative convenience").  Use of the word "normally" in Spriggs reflects articulation of general guidance, not a restrictive rule.  Although separation from active duty normally terminates representation, highly contextual circumstances may warrant an exception from this general guidance in a particular case.  In any given case, separation from active duty may amount to a routine personnel action or may implicate significant government interests.  Likewise, cancellation or postponement of a

24

separation date, or recall to service in a reserve status, may involve routine action or significant interests. See, e.g., MCO P1900.16F para. 5002; 10 U.S.C. §§ 12301, 12302. Similarly, considerations pertinent to the role of a particular member of the defense team in a specific case may range from routine matters to complex considerations.

Absent a record developed at trial on these matters, the present case does not provide an appropriate occasion for us to set forth in detail the manner in which these various considerations should be weighed at trial and on appeal. The present case, however, does underscore the importance of the military judge establishing on the record the reasons for the absence of counsel. At trial, if the parties indicate that a member of the defense team has been excused under R.C.M. 505(d)(2)(B)(iii), the military judge must ensure under R.C.M. 813(c) that: (1) the record demonstrates that a competent detailing authority has determined that good cause exists for excusing counsel; and (2) that the record sets forth the basis for the good cause determination.

As noted by the court below, the defense team did not fulfill its responsibilities to Appellee with respect to full discussion of the options regarding severance of the relationship between Appellee and Captain Bass. See Hutchins, 68 M.J. at 629-30. The responsibility, however, for ensuring

25

that the record contained an accounting of Captain Bass's absence and departure that was accurate as a matter of law and fact rested with the military judge under R.C.M. 813(c). Under the circumstances of this case, the vague and uncertain answers provided by defense counsel on matters of law and fact should have alerted the military judge as to the importance of establishing a clear record in this case. The military judge erred in failing to ensure that the record accurately reflected the reasons for the absence of counsel.

## C.  ASSESSING PREJUDICE

The court below noted that our Court has taken a variety of approaches to the question of prejudice flowing from errors in severance of the attorney-client relationship. See Hutchins, 68 M.J. at 630 (citing United States v. Iverson, 5 M.J. 440 (C.M.A 1978) (prejudice presumed), United States v. Baca, 27 M.J. 110 (C.M.A. 1988) (same), United States v. Acton, 38 M.J. 330 (C.M.A. 1993) (prejudice evaluated in light of facts and circumstances); United States v. Kelly, 16 M.J. 244 (C.M.A. 1983) (same)). Focusing on the important value of counsel continuity, the lower court determined that a presumption of prejudice should apply to the circumstances of the current appeal, and set aside the findings and sentence. Hutchins, 68 M.J. at 631.

For purposes of considering our approach to the question of prejudice, we consider the context of the error in the present case. In that regard, we have before us both the record of trial and the record of the post-trial factfinding hearing.

We note that Appellee had the assistance of multiple counsel throughout the pertinent proceedings. After the assistant detailed defense counsel left the defense team, he had the assistance of a replacement assistant defense counsel detailed prior to trial. We further note that the military judge, at the request of the defense, granted a continuance to facilitate preparation by the new member of the defense team. The defense did not thereafter request additional time or resources to permit the reconstituted defense team to prepare for or conduct proceedings at trial. Similarly, we note that the personnel action leading to the severance in the present case resulted from a request initiated by the assistant defense counsel, not by the prosecution or the command. In that context, the case before us does not involve a violation of Appellee's Sixth Amendment right to counsel. See Morris v. Slappy, 461 U.S. 1, 14 n.6 (1983). This case does not involve structural error. See United States v. Davis, 64 M.J. 445, 449 (C.A.A.F. 2007) (noting that "[a]n error is treated as inherently prejudicial, without the need for a further showing of prejudice, only if it amounts to a structural defect[] in the

constitution of the trial") (citation and quotation omitted) (alteration in original); see also United States v. Brooks, 66 M.J. 221, 224 (C.A.A.F. 2008) (noting that structural error involves "errors in the trial mechanism so serious that 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence'" (quoting Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991))).

The errors in this case involve oversights and omissions in addressing the issue of severance on the part of defense counsel, senior officials in the defense counsel structure, and the military judge. The case does not involve any decision by the military judge to deny pertinent relief requested by the defense, such as a request for additional time or resources for trial preparation, nor does the case involve a decision by the military judge to overrule a related defense objection. Cf. United States v. Gnibus, 21 M.J. 1, 8-9 (C.M.A. 1985). Likewise, the case involves a personnel action initiated by a member of the defense team, and does not involve governmental action undertaken for the purpose of altering the composition of the defense team. Cf. Eason, 21 C.M.A. at 338-39, 45 C.M.R. at 112-13 (describing circumstances in which action by the government could be viewed as interference with the attorney-client relationship).

In that context, the case before us presents trial errors that can be evaluated under the standard formula for assessing prejudice against the defense, in which the defense must establish that the error produced material prejudice to the substantial rights of the accused. See Article 59(a), UCMJ; Acton, 38 M.J. at 336-37. Such an approach reflects our recent decisions involving errors that produced an interference with the attorney-client relationship. See United States v. Wiechmann, 67 M.J. 456 (C.A.A.F. 2009); United States v. Rodriguez, 60 M.J. 239 (C.A.A.F. 2004).

Article 59(a), UCMJ, requires that a case not be reversed for error unless "the error materially prejudices the substantial rights of the accused." In the present appeal, the defense does not assert that Appellee failed to receive the effective assistance of trial required by the Sixth Amendment. Instead, the defense identifies negative aspects of the defense team's performance at trial in areas that had been under the responsibility of Captain Bass, asserting that Captain Bass would have outperformed the defense team in each of those areas in a positive manner, thereby producing a different result as to the findings or sentence or both.

The areas of interest identified by the defense on appeal involve Captain Bass's positive relationships with the military judge, lead defense counsel, and Appellee; his expertise in

29

mental health issues; and his preparation for sentencing.
After reviewing the defense trial team's performance in
hindsight, the defense on appeal identifies weaknesses and
asserts that Captain Bass would have performed in a superior
manner.

Appellee was represented by two attorneys throughout the
process:  (1) Mr. Brannon, the civilian counsel selected by
Appellee, who had nearly thirty years of experience, including
dozens of jury trials and a number of capital cases; and (2) Lt.
Col. Smith, his lead detailed defense counsel, whose experience
included four years of active duty, service as Reserve Regional
Defense Counsel, and service as an assistant U.S. attorney in
his civilian capacity.  After the departure of his third
counsel, Captain Bass, Appellee was provided with substitute
counsel, Lt. Col. Cosgrove, who had six years of active military
justice experience, as well as contemporary civilian experience
as a public defender, where he served as the senior trial
attorney for felony cases.  None of the issues under the initial
responsibility of Captain Bass involved matters of fact or law
in which he had unique knowledge or expertise beyond that which
could be gained through routine preparation by the attorneys who
remained on the defense team.  The military judge granted the
defense team each pertinent request for a continuance identified
by the defense as necessary to prepare for trial.  Appellee has

not contended that his remaining counsel were constitutionally ineffective in their trial preparation. Under these circumstances, we decline the defense invitation to measure the potential performance of Captain Bass against the actual performance, in the crucible of a contested trial, by those experienced counsel who remained on the case. In view of these considerations, we conclude that Appellee has not demonstrated that errors by the military judge and counsel with respect to the severance of Captain Bass materially prejudiced the substantial rights of Appellee.

## IV.  CONCLUSION

We answer the first and second certified issues by holding that the record of trial does not establish a valid basis for termination of the attorney-client relationship between Appellee and Captain Bass under the circumstances of this case. We answer the third certified issue by holding that the errors in this case may be tested for prejudice, and that the errors did not materially prejudice the substantial rights of Appellee.

We note that the Court of Criminal Appeals, having set aside the findings and sentence based upon a presumption of prejudice, has not reviewed the balance of the case, including other issues raised by Appellee with respect to the validity of

the findings and sentence.  Accordingly, a new review must be conducted under Article 66(c).

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed.  The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006).