# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Senior Airman HUSEIN G. KHAN
### United States Air Force

### Misc. Dkt. No 2015-03

### 24 August 2015

Appellate Counsel for the Petitioner:  Philip D. Cave (civilian counsel).

Appellate Counsel for the United States:  Major Mary Ellen Payne and Gerald R. Bruce, Esquire.

Before

HECKER, ALLRED, and BROWN
Appellate Military Judges

## OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

The petitioner filed a Petition for Extraordinary Relief in the Nature of a Writ of Mandamus and/or Prohibition, as well as a stay of his pending court-martial.[1]   We deny his petition and we also deny as moot his motion for a stay.

## *Procedural Background*

On 3 June 2014, charges were referred alleging the petitioner committed sexual assault against a female airman and made a false official statement, in violation of Articles 120 and 107, UCMJ, 10 U.S.C. §§ 920, 907.  At the opening court session on 23 February 2015, the petitioner was represented by a civilian attorney and a military attorney.[2]

---

[1] Petitioner filed the motion for a stay on 5 June 2015 and a supplement on 8 June 2015.

[2] A different military attorney was detailed to represent the petitioner after the preferral of charges.  That attorney represented the appellant through the Article 32, UCMJ, investigation but subsequently separated from active duty

The petitioner pled not guilty and elected trial before members. The first witness for the government was the alleged victim of the Article 120, UCMJ, charges. After the defense completed its cross-examination, several Article 39(a), UCMJ, 10 U.S.C. § 839(a), sessions were held.

During the final session, the petitioner released both defense counsel and the case was continued until new counsel could be appointed. A successor military attorney was detailed and the appellant retained a new civilian attorney.

On 24 April 2015, the military judge heard motions from successor counsel, asking her to dismiss the charges, order a mistrial, recuse herself and recuse the panel, as described further below. She denied all the motions, other than the motion to dismiss charges for "deprivation of counsel of choice." She initially deferred ruling on that motion, and then denied it on 1 May 2015.

The appellant filed a writ with this court on 8 May 2015, raising three issues:

I. Petitioner released his military and civilian defense counsel in the midst of trial. Did the actions of the military judge create a conflict within the defense team which then caused Petitioner to release his counsel? If so, did she deprive Petitioner of his counsel of choice; and did she further err in failing to dismiss the charges for a deprivation of counsel of choice?

II. Petitioner released his military and civilian defense counsel in the midst of trial, based on questions and comments made on the record by the military judge. Did the military judge abuse her discretion in then denying subsequent requests and a motion to recuse herself from hearing and deciding the motions and continuing to sit as the trial judge?

III. Petitioner released his military and civilian defense counsel in the midst of trial, based on questions and comments made on the record by the military judge. Did the military judge abuse her discretion in denying a subsequent motion to declare a mistrial?

Through this writ, the petitioner asks this court to (1) issue a writ of prohibition barring further prosecution of the case based on interference with his counsel of choice,

---

and the petitioner released him from further representation. A new military attorney was detailed to represent the petitioner in September 2014. The petitioner also retained a civilian attorney on 28 April 2014.

and (2) issue a writ of mandamus ordering recusal of the military judge and a mistrial. The government opposed the petitioner's request for extraordinary relief.

*Facts*

The circumstances leading to this writ first arose during an Article 39(a), UCMJ, session on 26 February 2015, the day after the alleged victim's testimony during the government's case. Until that morning, the trial counsel had intended to offer into evidence a recording of a pretext call made by the alleged victim to the petitioner. The military judge had previously ruled that portions of that recording were inadmissible under Mil. R. Evid. 412. To that end, the defense had spent several hours attempting to prepare a redacted version of the phone call.[3]

At the Article 39(a), UCMJ, session on 26 February 2015, however, the trial counsel announced the government no longer intended to offer the pretext phone conversation recording into evidence and would instead call a military investigator to testify about statements made during the pretext call. The civilian attorney indicated the defense did not yet have a position on whether it objected to this plan. The trial counsel asked for a 10-minute recess, after which the agent would testify about the pretext call.

The following exchange then occurred:

> DC: Judge, with all due respect, . . . we have a reasonable expectation of taking the government when they say they're going to put a piece of evidence in their case. We spent last night, hours, working on a redaction of the pretext phone call. We walk in this morning, the government says well now we're not going to put on the pretext phone call. . . . I have a reasonable expectation of being able to rely on what my opposing counsel tells me. Ten minutes is not enough time to adjust fire to that. It's just not. It's not fair to my client. We need a chance then, okay. We were operating under the premise that there's going to be a pretext phone call. We're all working towards a 95 percent solution. I thought we had a 95 percent solution. Ten minutes . . . is not enough time for me to be able to say okay this is good or this is not good. We're getting to the point where, you know, much like with the Ambien issue a couple of days ago where Ambien was the big issue in the case. Now Ambien is not an issue in the case. I mean we're getting to the point where my client is not getting a fair trial [i]n our opinion, with all due respect.

---

[3] Similar efforts were underway regarding a videotape of the appellant's statement to military investigators.

MJ: Well, it sounds like if he's not, it's because –

TC: Your Honor, can I say something?

MJ: Before I do?

TC: Yes, Your Honor.

MJ: Go ahead.

TC: Your Honor, the government also spent hours last night figuring out whether and how we're going to put in a pretext phone call. We're certainly allowed to change gears and decide what evidence we want to put on or not put on at any point. The question is simply whether the defense has an objection to our method of proof.

MJ: This is what I see. You guys have discovery. You have notice of witnesses. You know what potential evidence there is and that you both should be prepared to adjust for changes in those things. This isn't something new. The pretext [call] is out there. They've chosen a different way to put it in. I don't understand why it would take a long time for you to be able to adjust to the government changing their presentation of evidence.

DC: Because it affects the way that we are going to otherwise approach the case, potentially. It may not take this long.

MJ: That's what happens in litigation.

DC: I understand that, Judge. And if the fault's on me, then fine, the fault's on me. But my client deserves a fair trial and we're getting close to the point of where, respectfully, I don't think he's getting one.

MJ: Because of IAC?

DC: If that's the issue, Judge, then you know --

MJ: Well, I'm asking you?

DC: I don't know what the issue is, Judge. But, I mean, we've got a 412 ruling that says all this stuff is coming in and now we're being told well, maybe it's not going to come in. I've got [the] government telling me Ambien is the nature of this case. No, Ambien is not the nature of the case. . . . [Y]es, we have prepared a case. We prepared a case based on what we reasonably expected was going to come into evidence in this case. That's not what's happening. I'm not saying that that doesn't happen in trials. I understand that happens in trials. But we're putting in eighteen hour days since Saturday to give our client the best defense possible and we need some time to adjust fire now that things have changed a little bit. It's not my fault that the government didn't come into court with a video ready to go. . . . The government is the one who puts in the video. The government then says we object to your [Mil. R. Evid.] 412 motion. Okay. Then we should have walked into court on Monday or Tuesday with a video with [the Mil. R. Evid.] 412 portions redacted; a couple of different versions. That's not unreasonable. That's not on us. That's not why this case is being delayed the way it is. So an extra few minutes for my client when he's got everything in the world on the line, I don't believe is unreasonable.

MJ: Well, I don't agree that that's how the [Mil. R. Evid.] 412 and the video played out. In fact, I think your co-counsel admitted that you all failed to argue --

DC: On one portion.

MJ: -- the redaction of the video in your [Mil. R. Evid.] 412 motion; especially when I asked how is this going to come in. So how much of a continuance would you like?

DC: Thirty minutes, Judge.

MJ: All right. . . . So where it stands now is that the defense has requested a recess for thirty minutes before the government can continue its case. I'll take those thirty minutes to decide on [the admission of] the video. I'm not sending the members away. We're going to

> continue with them, at least through this next witness and then take a break. The video, if any, will be after the lunch break. And it might be an extended lunch break based on the editing.

The court-martial did not reconvene after that recess. Instead, several Rule for Courts-Martial (R.C.M.) 802 conferences were held where the parties and military judge discussed the petitioner's desire to release his defense counsel and a potential continuance in the court proceedings.[4]

Later that day, an Article 39(a), UCMJ, session was convened. The military judge asked the petitioner whether he wanted to release his counsel. The petitioner said yes and, when asked why, responded: "Well, ma'am, based on what was discussed during this case and prior work that had been done during this case . . . I don't feel like they can adequately represent me."

In response, the military judge informed the parties that the prior evening she had told a fellow trial judge that the civilian attorney was among the best civilian defense counsel she had seen and that she still believed that to be true. She also relayed that "nothing that I saw . . . gives me pause about . . . either defense counsel's representation of the accused in this case." Although she "may bark and cause counsel to provide me more explanation about things," the military judge reminded the defense counsel that she had given the defense additional time to prepare its response to the government's change in strategy even though she "may not have liked it and . . . may have shown that on the record . . . ." Based on what she had observed during the trial proceedings, the military judge told the petitioner she had not seen anything that would lead her to believe either defense counsel "have been anything other than fully effective." She recognized, however, that she did not know everything the petitioner knew about his counsel and their preparation.

The petitioner said his decision to release the two counsel was voluntary and that it was his own decision. The government did not oppose the appellant's request. The military judge granted the appellant's request, with the military defense counsel's release becoming effective upon the detailing of a new military counsel. She then continued the case.

On 24 April 2015, the military judge convened an Article 39(a), UCMJ, session to address the successor defense counsel's motions asking that she dismiss the charges due to improper interference with the petitioner's right to counsel of choice, and a dual motion requesting a mistrial and recusal of the military judge. The petitioner told the military judge he understood his right to counsel and desired to be represented by his successor military and civilian counsel.

---

[4] The parties did not describe the substance of these discussions when they went back on the record following the R.C.M. 802 session.

At the beginning of the session, the defense asked the military judge to recuse herself from hearing and deciding the pending motions due to the potential for actual and implied bias. She denied that request, stating that an outside observer would not question her ability to be impartial, that she would recuse herself if she could not act impartially, and that she was indeed impartial and would follow the law.

As this hearing, the petitioner testified that he believed the military judge was treating the defense and government counsel differently. He felt the military judge had more questions for his lawyers than for the government and was being more critical of them while giving more leeway to the government when the trial counsel made mistakes. He also noted the military judge had expressed frustration with the case taking too long. Based on what he was seeing, the petitioner began to have concerns about whether he was going to have a fair trial.

The petitioner testified that he heard the military judge use the acronym "IAC" and thought it had something to do with racial or ethnic discrimination.[5] According to the petitioner, the military defense counsel appeared shocked upon hearing the military judge's comment and the civilian attorney looked frustrated and upset.

According to the petitioner, when the defense met privately during the recess after this exchange in court, the military defense counsel appeared to be uncertain about what to do next. The civilian attorney explained that "IAC" was a term that stood for inadequate counsel and that the civilian attorney interpreted this to mean that the military judge believed the defense counsel were not performing their duties as they should and were inadequate. He told the petitioner it was unusual for a military judge to question the effectiveness of counsel on the record and that what had occurred was a "legal unicorn." The petitioner testified that the civilian attorney was sad about being in the courtroom and that the civilian attorney thought maybe he was getting too old to practice law.[6]

The petitioner testified that, upon hearing this, he was starting to feel even more concerned about the fairness of his trial. After watching what happened and seeing how his attorneys reacted to it, he did not have any more confidence in them and he was scared, given the effect the case could have on his future. This led him to release the two attorneys from further representation.

Because his testimony indicated he thought the military judge had been hard on the defense and generally questioned the defense counsel's competence, the defense renewed its request that she recuse herself based on implied bias since, in the defense's view, this testimony made the issue a personal one between the petitioner and the judge. She denied the defense request, as well as the defense motion for a mistrial.

---

[5] There had been extensive discussion during voir dire about whether the government's exercise of a peremptory challenge was in compliance with *Batson v. Kentucky*, 476 U.S. 79 (1986).

[6] The petitioner also testified that he did not remember his civilian attorney telling the military judge he was not getting a fair trial and did not recall him explaining why he made those comments.

Approximately a week later, she issued a written ruling denying the motion to dismiss the charges. The petitioner then filed the instant writ regarding the military judge's denial of the motions.

*Discussion*

The All Writs Act, 28 U.S.C. § 1651(a), authorizes "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This court is among the courts authorized under the All Writs Act to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a); *see LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013). The parties do not contest our jurisdiction to consider this petition.

A writ of prohibition is the process by which a superior court prevents an inferior court from exceeding its jurisdiction; it prevents the usurpation of judicial power and is used to confine courts to the proper exercise of their power and authority. *United States v. Gross*, 73 M.J. 864, 866–67 (Army Ct. Crim. App. 2014). Its counterpart is the writ of mandamus, which is used, inter alia, "'to compel [officers and commanders] to exercise [their] authority when it is [their] duty to do so.'" *Dew v. United States*, 48 M.J. 639, 648 (Army Ct. Crim. App. 1998) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943). We use the same test for writs of mandamus and prohibition. *Gross*, 73 M.J. at 866.

The Supreme Court has held that three conditions must be met before a court may provide extraordinary relief in the form of a writ of extraordinary relief: (1) the party seeking the relief must show that the "right to issuance of the relief is clear and indisputable"; (2) seeking the writ must have "no other adequate means to attain the relief; and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted). A writ of mandamus and a writ of prohibition are drastic instruments to be used only in truly extraordinary circumstances. *Gross*, 73 M.J. at 867.

The petitioner contends the actions of the military judge deprived him of his right to counsel of choice because they created a conflict within the defense team which then caused him to release his counsel. Specifically, the petitioner contends the military judge's "because of IAC?" reference "set off a chain of events that lead to the wrongful severance of [his] counsel of choice." He contends that, regardless of what the military judge intended, this comment's negative impact on the fairness of the petitioner's trial requires dismissal of the charges or a mistrial. He also argues the military judge must be recused from further participation in the case due to the appearance of bias. We disagree.

We review issues affecting the severance of an attorney-client relationship de novo. *United States v. Blaney*, 50 M.J. 533, 539 (A.F. Ct. Crim. App. 1999) (citing *United States v. Iverson*, 5 M.J. 440 (C.M.A. 1978). We review a military judge's refusal to recuse herself for an abuse of discretion. *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001).

Under the Sixth Amendment,[7] the accused in a criminal proceeding has the right to the assistance of counsel. The "core purpose of the counsel guarantee was to assure '[a]ssistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Ash*, 413 U.S. 300, 309 (1973). The Supreme Court accordingly explained:

> [W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also Morris v. Slappy*, 461 U.S. 1, 14, 1983) ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel."). Similarly, under the UCMJ, an accused has the right to representation by civilian and military counsel. Article 38(b)(3), UCMJ, 10 U.S.C. § 838(b)(3).

The right to counsel of choice under the Sixth Amendment, as well as under the UCMJ, is not absolute and is circumscribed in certain respects. *United States v. Rhoades*, 65 M.J. 393, 394 (C.A.A.F. 2008); *Wheat*, 486 U.S. at 159. For example, "'The need for the fair, efficient, and orderly administration of justice' may outweigh the interest of the accused in being represented by his counsel of choice." *Rhoades*, 65 M.J. at 394; *see United States v. Thomas*, 22 M.J. 57, 59 (C.M.A. 1986); *see also Wheat*, 486 U.S. at 160 (holding the right to select and be represented by one's preferred attorney may be outweighed by the judicial system's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them").

There are some circumstances under which the conduct of others, including a trial judge and including criticism of the defense counsel, can improperly interfere with an established relationship between the accused and his counsel.[8] The conduct of the military judge in this case does not rise to the level of creating such interference.

---

[7] U.S. CONST. amend. VI.

[8] *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006) (holding a trial judge's erroneous denial of the defense attorney's application for admission pro hac vice violated the defendant's Sixth Amendment right to choice of counsel; *United States v. Morrison*, 449 U.S. 361, 366-67 (1981) (in assessing remedy, the court assumed that

After the civilian attorney asked for time to consider how to respond to the government's plan to call a witness to testify about the pretext phone call, he indicated the situation was "getting to the point" where the appellant was not getting a fair trial. The military judge began to respond with her reaction to that comment, but was interrupted by a comment from trial counsel. She then pointed out that the defense had always been on notice that this item existed as potential evidence and therefore should not require much time to adjust to the government's change regarding how it was going to introduce that evidence. The civilian defense counsel acknowledged the defense may not need much time. The military judge's observation turned out to be true, as the defense ultimately only asked for an additional 20-minutes to assess the issue.

However, apparently in response to the military judge's reasonable comment that the defense had been on notice about this evidence and should be able to quickly deal with the situation, the defense counsel also noted "if the fault's on me, then fine, the fault's on me" and again reiterated his view that it was "getting close" to the point of the appellant not getting a fair trial. This comment led the judge to ask the civilian attorney if ineffective assistance of defense counsel was the basis for that belief. The civilian attorney provided further elaboration on the defense's extensive preparation for trial, noted the government should have done more to prepare its case and argued an "extra few minutes" in recess was not unreasonable. The military judge then granted the defense's request for a 30-minute recess.

The actions of the military judge here were not inappropriate. She did press the defense counsel to explain the basis for his belief that the appellant's trial was getting to

---

investigators who met with defendant on another matter without knowledge or permission of counsel and who disparaged counsel and suggested she could do better without him interfered with counsel); *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964) (finding the government's arbitrary or unreasonable action that impairs the effective use of counsel of choice may violate a defendant's constitutional right to due process of law); *Williams v. Woodford*, 306 F.3d 665, 683 (9th Cir. 2002) (holding that "[w]hen the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel [by disparaging that counsel in front of the defendant], that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant); *United States v. Amlani*, 111 F.3d 705, 712- 13 (9th Cir. 1997) (noting that a Sixth Amendment claim would arise if a prosecutor's repeated disparagement of the defendant's chosen counsel destroyed his confidence in the counsel and led him to retain different counsel); *United States v. Hutchins*, 69 M.J. 282, 291-92 (C.A.A.F. 2011) (finding no Sixth Amendment violation where the personnel action leading to the severance did not stem from actions by the prosecution or the command and there was no action taken by them for the purpose of altering the defense team), *rev'd on other grounds*, 72 M.J. 294 (C.A.A.F. 2013); *United States v. Spriggs*, 52 M.J. 235, 246 (C.A.A.F. 2000) ("Absent government misconduct, the routine separation of a judge advocate from active duty normally terminates any attorney-client relationship . . . ."); *United States v. Gnibus*, 21 M.J. 1, 6 (C.M.A. 1985) (noting the legal history that commanders should not take action which interferes with or severs an attorney-client relationship); *United States v. Beckley*, 55 M.J. 15, 24-25 (C.M.A. 1981) (noting a staff judge advocate's threat to bring ethics complaint against defense attorney was heavy-handed and maybe more than circumstances required but did not infringe on the appellant's choice of counsel because the attorney had an actual conflict of interest resulting in his withdrawal); *United States v. Clark*, 11 M.J. 70 (C.M.A. 1981) (finding the government's failure to serve civilian counsel with the post-trial review improperly interrupted his role as counsel); *United States v. Eason*, 45 C.M.R. 109, 111 (C.M.A. 1972) (observing that an attorney-client relationship cannot be severed or materially altered for the administrative convenience of the government); *United States v. Allred*, 50 M.J. 795, 800 (N.M. Ct. Crim. App. 1999) (holding the sanctity of the attorney-client relationship must be protected from government interference).

the point of being unfair and she did accurately point out that both parties should be prepared for changes in the other's evidentiary strategy. When the civilian attorney referenced his potential "fault" in the defense needing more time and again raised the issue of a fair trial, the military judge asked defense counsel to clarify whether ineffective assistance of counsel was the basis for this concern. In response, the defense counsel indicated the defense had been extensively preparing for the case and simply needed some time to adjust to this change in the prosecution's strategy. It was not unreasonable for the military judge to question the defense on why additional time was needed and what was underlying the defense's references to the lack of a fair trial.

Such questioning of defense counsel by a trial judge is not uncommon and is not inappropriate, especially when it is as benign as what occurred here. *Cf. Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."); *United States v. Gray* 51 M.J. 1, 51-52 (C.A.A.F. 1999) (finding military judge's criticism of defense counsel's failure to interview possible defense witnesses and statement that defense counsel was unable to ask ineligible voir dire questions was not biased or inappropriate); *United States v. Cooper*, 51 M.J. 247, 251 (C.A.A.F. 1999) (holding a military judge's personal expression of irritation with a defense counsel did not divest him of the necessary appearance of impartiality); *United States v. Loving*, 41 M.J. 213, 257-58 (C.A.A.F. 1994) ("Generally, courtroom clashes between counsel and the judge do not constitute disqualifying bias.")

Contrary to the assertion of the petitioner, we do not find the questioning of the military judge constituted an accusation or a conclusion that his defense counsel were ineffective. Nonetheless, based on the testimony of the petitioner, the defense team had an adverse reaction to the military judge's comments, apparently believing she had said they were performing inadequately. The military attorney was uncertain about what to do next while the civilian defense attorney became dejected to the point that he questioned his future in the law. Understandably, this caused the appellant to question whether his attorneys should continue to represent him. He ultimately lost confidence in them and voluntarily released them from further representation, even after the military judge complimented his civilian attorney and told the petitioner she had observed his counsel to be "fully effective" so far in the trial.[9] When he asked to release the counsel, the petitioner told the military judge that his decision to release them was based in part on "prior work that had been done in the case." The military judge did not ask the petitioner on the record to elaborate on this aspect of his dissatisfaction.[10] The military judge then allowed the petitioner to release his counsel.

---

[9] The appellant's successor counsel expressly declined to take a position on whether the prior defense counsel had been ineffective.

[10] Because the substance of the discussions held during R.C.M. 802 sessions was not placed on the record, we do not know what other information the military judge had learned about this situation.

Given this, we find the actions of the military judge did not deprive the petitioner of his counsel of choice. Her discussion with the defense counsel was not objectively unreasonable and clearly was not intended to be an accusation that the counsel were ineffective nor to interfere with the petitioner's relationship with them. The counsels' reaction to this exchange with the military judge was unexpected and out of the ordinary. This, along with his concern about "prior work that had been done during the case," led the petitioner to lose confidence in their ability to continue as his attorneys. The petitioner then chose to voluntarily release them from further representation.

Under these circumstances, the military judge did not deprive the petitioner of his counsel of choice. We also conclude that a reasonable person, knowing all the relevant facts in this trial so far, would not harbor doubts about the military judge's impartiality. *See Hasan v. Gross*, 71 M.J. 416, 418-19 (C.A.A.F. 2012); *Butcher*, 56 M.J. at 91; R.C.M. 902(a). As such, the petitioner has failed to show that his right to the dismissal of charges, a mistrial or recusal of the military judge is clear and indisputable. Under these circumstances, we do not find issuance of the writs of prohibition or mandamus to be appropriate. The military judge's actions and rulings do not constitute a judicial usurpation of power, and this is not a truly extraordinary circumstance requiring us to intervene through the drastic instrument of an extraordinary writ. *See United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983); *Murray v. Haldeman*, 16 M.J. 74, 76 (C.M.A. 1983).

*Conclusion*

The petitioner has not carried his burden to demonstrate that his case presents extraordinary circumstances warranting issuance of the writs of prohibition or mandamus. Accordingly, it is by the court on this 24th day of August 2015,

**ORDERED:**

That the petition for extraordinary relief in the nature of writs of prohibition and mandamus and motion for a stay are hereby **DENIED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court